Lorraine PFEIL, Petitioner-Respondent,

v.

Robert PFEIL, Appellant.†

Court of Appeals

No. 82–2413. Submitted on briefs July 6, 1983.—
Decided September 26, 1983.

† Petition to review denied.

For the appellant the cause was submitted on the brief of *Gerald T. Flynn,* of Racine.

For the petitioner-respondent the cause was submitted on the brief of *Geoffrey Van Remmen,* of Racine.

Before Scott, C.J., Voss, P.J., and Robert W. Hansen, Reserve Judge.

HANSEN, R.J.   Robert Pfeil appeals from the property division ordered by the trial court incident to a divorce judgment granted to his wife, Lorraine.  Essentially, the challenge on appeal is to the trial court's decision to award the wife $20,000 more than the husband received from the sale of the family home.  The dispute between the parties primarily involves military service disability benefits paid or payable to the appellant.  In turn, these include: (1) future disability benefits or their present cash value; (2) disability benefits on deposit in a bank savings account in the name of the appellant in the amount of $18,000; (3) disability benefits invested by the appellant in a mortgage note payable to him in the amount of $20,000, and (4) disability benefit moneys, plus inheritance moneys, received by the appellant and used by him to purchase three parcels of real estate.  As to three of these four categories, we disagree with the trial court's conclusions of law.  We will deal with each of these four categories in turn.

As to future disability benefits to be received by the appellant or as to the present cash value of such future benefits, the trial court correctly held that these were not assets subject to division as part of the marital assets of the parties. Our state supreme court, as to division of military disability benefits in a divorce action, held such benefits not to be "an asset to be divided between the parties." *Leighton v. Leighton,* 81 Wis. 2d 620, 637, 261 N.W.2d 457, 465 (1978). In that case, the court quoted with approval from the defendant husband's brief the statement that: "This pension is compensation to Mr. Leighton for impairment of his body. It is not in the nature of an asset acquired or accumulated through the marital relationship." *Id.* at 636, 261 N.W.2d at 464–65.

However, in listing the factors given consideration in awarding an additional $20,000 to the respondent wife out of the sale of the family home, the trial court included as a factor "that Mr. Pfeil is the recipient in the future of these veteran's administration disability benefits." In giving weight to the fact of future disability benefits being paid to the appellant, the trial court was doing indirectly what, under federal statutes and *Leighton,* it could not do directly. Authority for such compensatory award or balancing additional payment to the wife was found by the trial court in the Wisconsin statute providing that a trial judge, in dividing the property of the parties in a divorce action, may consider "whether one of the parties has substantial assets not subject to division by the court." Sec. 767.255(2r), Stats. We hold that the reach of this post-*Leighton* statute falls short of authorizing a division of or offsetting an award for federal military disability benefits or for railroad retirement benefits.

We deal here with the question of federal purpose or Congressional intent. In the case of federal military disability benefits, Congress has provided:

Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 3101(a) (1979).

In the case of Railroad Retirement Act benefits, the same protection against attachments or other legal process is provided. *See* 45 U.S.C. § 231m (1983). As to benefits paid under the Railroad Retirement Act, the United States Supreme Court made clear that "the vagaries of state law" are not to be permitted to disrupt the national purpose of "national uniformity that enhances the effectiveness of congressional policy." *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 584 (1979). In a case denying the applicability of the California community property law to federal military retirement benefits, the United States Supreme Court held that any such application "threatens grave harm to 'clear and substantial' federal interests." *McCarty v. McCarty,* 453 U.S. 210, 232 (1981). As to an indirect division by an offsetting award to compensate for federal benefits for spouses, the United States Supreme Court, in *Hisquierdo,* held that: "An offsetting award, however, would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his benefit check. The harm might well be greater." *Hisquierdo* at 588.

What is held in *Hisquierdo,* as to direct or indirect attempts by states to divide railroad retirement bene-

fits between spouses in divorce actions, and held in *McCarty,* as to state laws seeking to divide between spouses military service retirement benefits,[1] compels the conclusion that military disability benefits paid or payable to a disabled veteran are not to be divided between spouses in a divorce action and not to be made the basis for an offsetting or compensatory award to the spouse of the disabled veteran receiving the service-connected disability award. This cannot be done, directly or indirectly, by state court or state legislation.

Our holding requires reversal of that portion of the divorce decree where an award of $20,000 to the wife from the proceeds of the sale of the parties' home was made for the reason that future disability benefits payments to be received by the appellant are not a proper factor to consider in determining the division of property of the parties.

As the second category or area of concern, we deal with the $18,000 bank account that the trial court held was exempt from division because it represented disability benefits payments paid to the appellant prior to the divorce. Because, to quote the trial court, the appellant did not "commingle [the] money with anything else received during the course of the marriage," the savings

---

[1] We are aware, that by federal statute, the impact of the *McCarty* decision on military retirement pensions has been limited. Pub. L. 97–252, Title X, § 1002(a), 96 Stat. 730 (1982), effective February 1, 1983, which became 10 U.S.C. § 1408 (1983). However, this recently enacted statute does not affect or change the case law as to "the retired pay of a member [of the armed forces] retired for disability under chapter 61 of this title." 10 U.S.C. § 1408(a)(4). (Parenthetical phrase added.) It relates only to ordinary military service retirement benefits, not those based on physical disability, as are the benefits in the case before us.

account was held not to be subject to division. We agree and affirm this holding. In a case involving veteran's benefits deposited in an account in a federal savings and loan association where they were subject to withdrawal on thirty days' notice, the United States Supreme Court held that "bank credits derived from veterans' benefits were within the exemption, the test being whether as so deposited the benefits remained subject to demand and use as the needs of the veteran for support and maintenance required." *Porter v. Aetna Casualty & Surety Co.*, 370 U.S. 159, 161 (1962). By that test, the test of "immediate availability," the $18,000 savings account is not a marital asset subject to division, and we add only the warning that, on remand, as with future disability benefits, the $18,000 savings account is not to be given weight or consideration in reaching the appropriate division of property between these parties. The $18,000 has not been "invested;" it is "immediately available" for use by the appellant, and it is to be treated exactly as present and future disability benefits payments are to be treated.

We deal next with the $20,000 of disability benefits payments invested by the appellant in a mortgage note payable to him. The trial court concluded that, under 38 U.S.C. § 3101(a) (1979), since the $20,000 was traceable to disability benefits payments received by the appellant, the mortgage was not a marital asset to be divided. We find this to be in error. The exemption of this $20,000, because it was received as disability benefits, was lost when it was invested by the appellant in the mortgage note. Our authority for so holding is, once again, a decision of the United States Supreme Court. The case of *Carrier v. Bryant*, 306 U.S. 545 (1939), dealt with negotiable notes and United States bonds purchased and held as investments for an incompetent war

veteran by his guardian out of payments of benefits authorized under federal laws relating to such war veterans. Recognizing the distinction between benefits payments and property purchased with money therefrom, the high Court held "it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings." *Id.*, at 549. This is, of course, no more than the reverse side of the coin of the test of "immediately available" as spelled out in *Porter*. Applied here, it means that the $18,000 bank account retained its exempt status but that the $20,000 invested in the mortgage note lost its exemption.

As to the trial court order that four lots in the state of Florida be put up for sale and the proceeds divided equally between the parties, there is no basis for a successful challenge by the appellant. The trial court found that there had been no claim of exemption raised at the time of trial and held that the appellant's right to raise the issue had been waived. We would agree, but because the case is going back on remand for a new trial court order as to the division of property between the parties, we find reason for going beyond waiver to hold that the lots, like the mortgage note, even if entirely purchased with disability benefits payments, lost their exemption when invested in the real estate purchase. *Carrier*, 306 U.S. at 549.

For the sake of completeness, we deal with two additional issues raised by the appellant on this appeal. The first is as to the sum of $3,400, which the appellant claims he received as an inheritance and which he claims is entitled to exemption under sec. 767.255, Stats. The appellant claims this inheritance money was used to help purchase the family home. The trial court held it was unable to trace this money during the fourteen years after its receipt and prior to purchase of the family home. This is a finding of fact, not to be reversed unless

it is against the great weight and clear preponderance of the evidence. *Posnanski v. City of West Allis,* 61 Wis. 2d 461, 465–66, 213 N.W.2d 51, 52–53 (1973). We do not find it to be that. The finding of fact is affirmed.

Finally, the appellant contends that the trial court failed to give reasons for its award to the wife of an increased share of the marital estate. There is no merit in this contention. The trial court followed the *Lacey* mandate of the Wisconsin Supreme Court as to "including in findings or decision the factors found relevant and considered by the judge . . . ." *Lacey v. Lacey,* 45 Wis. 2d 378, 386, 173 N.W.2d 142, 146–47 (1970). All aspects of the case were discussed in the trial court's decision, and the reasons relied upon by the trial court were stated and set forth.

We affirm in part, reverse in part, and remand to the trial court for review and reconsideration that portion of the judgment of divorce dealing with the division of property between the parties with directions to give no weight or consideration in making a property division to the factor of future disability benefits or to the $18,000 savings account made up of disability benefits payments, and further direct that the $20,000 mortgage note in the name of the appellant be divided between the parties as a marital asset subject to division and for further orders consistent with this opinion.

*By the Court.*—Judgment and order affirmed in part; reversed in part and remanded.